UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JANI LOPEZ-MEAD, Plaintiff, vs. JO ANNE B. BARNHART, Commissioner of the Social Security Administration, Defendant. | ) | Case No. SACV 04-1310-RC<br>OPINION AND ORDER |

Plaintiff Jani Lopez-Mead filed a complaint on November 12, 2004, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on April 27, 2005, and the parties filed a joint stipulation on November 7, 2005.

**BACKGROUND**

**I**

On August 19, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since April 12, 1995, due to

fibromyalgia, constant numbness, seizures, and "possible early stages" of multiple sclerosis or lupus. Certified Administrative Record ("A.R.") 84-86, 91. The plaintiff's application was denied on November 26, 2002, and was denied again on March 10, 2003, following reconsideration. A.R. 70-79. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Steven L. Chaffin ("the ALJ") on January 14, 2004. A.R. 42-67, 80. On April 5, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 14-24. The plaintiff appealed this decision to the Appeals Council, which denied review on October 14, 2004. A.R. 5-13.

**II**

The plaintiff, who was born on April 13, 1957, is currently 48 years old. A.R. 57, 84. She has a high school education, has completed two years of college and previously worked for 15 years in advertising and media, including her most recent full-time work as an advertising director at Disneyland. A.R. 57-58, 92, 97, 104-18.

Since October 6, 1994, plaintiff has been treated by A. Lindsey Morrison, M.D., who has diagnosed plaintiff with fibromyalgia,[1] lupus

---

[1] Fibromyalgia, previously called fibrositis, is:

> a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical

erythematosus,[2] acute depression, and optic neuritis.[3] A.R. 174-80, 182-85, 256-67. On August 27, 2002, an anti-nuclear antibody ("ANA") screen was positive. A.R. 179. A cervical spine MRI taken May 6, 2003, showed mild degenerative changes, but the spinal cord showed no evidence of multiple sclerosis ("MS").[4] A.R. 173.

On May 30, 2003, Dr. Morrison opined that because of her lupus erythematosus, fibromyalgia, acute depression, and optic neuritis, plaintiff does not have the stamina or ability to work a 40-hour work week, and her condition would deteriorate if she tried to do so and she would miss more than 3 days of work each month. A.R. 182-85. Dr.

---

> community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).

[2] Lupus erythematosus is "a group of connective tissue disorders primarily affecting women aged 20 to 40 years, comprising a spectrum of clinical forms in which cutaneous disease may occur with or without systemic involvement." Dorland's Illustrated Medical Dictionary, 1032 (29th ed. 2000).

[3] Optic neuritis is "inflammation of the optic nerve." Id. at 1207.

[4] MS is "a disease in which there are foci of demyelination of various sizes throughout the white matter of the central nervous system, sometimes extending into the grey matter. Typically, the symptoms of lesions of the white matter are weakness, incoordination, paresthesias, speech disturbances, and visual complaints. The course of this disease is usually prolonged, so that the term *multiple* also refers to remissions and relapses that occur over a period of many years. The etiology is unknown." Dorland's Illustrated Medical Dictionary at 1611.

Morrison further opined that during an 8-hour day: plaintiff can occasionally lift and/or carry up to 5 pounds, bend, squat, reach, and climb stairs; can sit for up to 2 hours, stand for 5-15 minutes, and walk for 15-30 minutes with a cane and rest; can use her hands, arms and legs for limited periods of time; is mildly restricted from exposure to dusts, fumes or gases and from turning her head and/or bending her neck; can never climb ladders, work at unprotected heights or around moving machinery, or be exposed to marked temperature changes or stress; and is totally restricted from holding her head in one position.  A.R. 183-84.  Dr. Morrison found plaintiff uses a cane to ambulate, and noted plaintiff must lie down for between 2 and 8 hours every day due to fatigue, pain, confusion, headaches, and depression.  A.R. 182, 185.  Furthermore, Dr. Morrison opined plaintiff is forgetful, has a poor short-term memory, confuses object, thinks slowly, and has a slight to moderate impairment in memory and concentration.  A.R. 185.

    Since December 19, 2000, plaintiff also has been treated by Gerald Ho, M.D., a rheumatologist, who has diagnosed plaintiff with multiple diseases, including fibromyalgia, systemic lupus erythematosus ("SLE"),[5] an unspecified autoimmune disease, MS,

---

[5] SLE is "a chronic, remitting, relapsing inflammatory, often febrile multisystemic disorder of connective tissue, acute or insidious in onset, characterized principally by involvement of the skin . . . , joints, kidneys, and serosal membranes.  It is of unknown etiology, but it is thought to represent a failure of regulatory mechanisms of the autoimmune system, as suggested by the high level of numerous autoantibodies against nuclear and cytoplasmic cellular components.  It is marked by a wide variety of abnormalities, including arthritis and arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis,

neuropathy,[6] gastroesophageal reflux disease, de Quervain's tenosynovitis,[7] paresthesias,[8] right L5-S1 radiculopathy,[9] and migraine headaches.  A.R. 189-219, 228-42, 268-74.  On December 19, 2000, Dr. Ho found plaintiff had 14 or 15 of 18 tender points for fibromyalgia.  A.R. 268.  On February 13, 2001, Dr. Ho found plaintiff had developed fine tremors in addition to her fibromyalgia.  A.R. 207.  On January 23, 2004, Dr. Ho noted that since he initially examined plaintiff, her fibromyalgia symptoms have progressed to include neurologic symptoms, photosensitivity, a malar rash,[10] synovitis,[11] and

---

leukopenia or thrombocytopenia, hemolytic anemia, elevated erythrocyte sedimentation rate, and positive LE-cell preparations."  Dorland's Illustrated Medical Dictionary at 1032.

[6] Neuropathy is "a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown."  Id. at 1212.

[7] de Quervain's tenosynovitis consists of "painful tenosynovitis [inflammation of a tendon sheath] due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis."  Id. at 514, 1798.

[8] Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication [a tactile hallucination in which there is a sensation of tiny insects crawling over the skin], often in the absence of external stimulus."  Id. at 701, 1324.

[9] Radiculopathy is a "disease of the nerve roots."  Id. at 1511.

[10] A malar or butterfly rash is "a pattern formed by a skin eruption across the nose and adjacent areas of the cheeks, as in [SLE]."  Dorland's Illustrated Medical Dictionary at 258.

[11] Synovitis is the "inflammation of a synovium; it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion with a synovial sac."  Id. at 1773.

a positive ANA.  A.R. 268-69.

On May 24, 2003, Dr. Ho opined that, because of her fibromyalgia, SLE, and unspecified autoimmune neurologic disease, plaintiff cannot work a 40-hour work week, and her condition would deteriorate if she tried to do so and she would miss more than 3 days of work each month. A.R. 189-92.  Dr. Ho further opined plaintiff "cannot perform repetitive motor activities or regular office activities due to her arthritis and neurologic disease."  A.R. 190.  Dr. Ho also opined that during an 8-hour day, plaintiff:  can occasionally lift and/or carry up to 5 pounds, bend, squat and reach; can sit for 1-2 hours at a time and 3-4 hours in an 8-hour day, stand for 5-15 minutes at a time and 2 hours in an 8-hour day, and walk for 15 minutes at a time and 1 hour during an 8-hour day; cannot use her hands, arms or legs for repetitive movements; is mildly restricted from being around moving machinery; moderately restricted from working at unprotected heights, exposure to marked temperature changes, driving a motor vehicle, and turning her head and/or bending her neck; and totally restricted from stress.  A.R. 191-92.  Dr. Ho opined plaintiff has moderate-to-severe short-term memory loss, uses a cane to ambulate and must lie down for between 2 and 3 hours every day due to chronic fatigue joint pain. A.R. 189, 192.  Finally, on January 23, 2004, Dr. Ho concluded:

> Given her history of diagnosed lupus with early neurological involvement and concomitant fibromyalgia, . . . [plaintiff] is completely disabled at this time.  She cannot participate in repetitive motion activities involving her upper or lower extremities.  This excludes her from typing, grasping,

pulling, or pushing in any repetitive fashion. She also has difficulty concentrating, due to her neurologic problems and chronic pain and fatigue. She cannot stand for more than 30 minutes at any one time, and it would be difficult for her to maintain regular employment.

A.R. 269.

On April 15, 2002, Donald J. Snider, M.D., examined plaintiff and concluded her "symptoms and complaints are primarily subjective"; however, "there is enough segmental aspect to her history . . . to at least be concerned about a lumbosacral root problem, particularly given that she has a history of being on steroids for a prolonged period of time." A.R. 139-40. On June 17, 2002, Dr. Snider noted plaintiff had a lumbar spine MRI that showed minimal if any lumbar disc disease, and that the studies performed are "against any peripheral nerve and/or central nervous system explanation of [plaintiff's] focal problem with discomfort and sensory disturbance in her right leg." A.R. 135.

Dr. Snider reexamined plaintiff on August 15, 2002, and started her on a trial medication because of plaintiff's complaints of right facial and right-sided numbness, although Dr. Snider was not convinced plaintiff had a neurological problem. A.R. 134. A visual evoked response study taken February 19, 2003, was abnormal and compatible with an optic nerve process on the right. A.R. 248. An MRI of the internal auditory canals taken February 20, 2003, revealed nonspecific findings that may reflect small vessel disease. A.R. 247. Finally, a

lumbar puncture, performed March 11, 2003, revealed unremarkable results upon testing plaintiff's spinal fluid for MS. A.R. 243-46.

On October 24, 2002, Nathan Lavid, M.D., a psychiatrist, examined plaintiff and diagnosed her with dysthymia and determined she had a Global Assessment of Functioning ("GAF") of 60.[12] A.R. 141-45. Dr. Lavid opined:

> [Plaintiff] is able to focus attention adequately. She is able to follow one- and two-part instructions. The [plaintiff] can adequately remember and complete simple tasks. She is receiving treatment for depression, which she reports is mild, and in such a state she is able to tolerate the stress inherent in the work environment, maintain regular attendance, and work without supervision. However, the [plaintiff] reports that she suffers from a number of physical ailments, including fibromyalgia and her return to the work force would have to be in accordance with these limitations.

A.R. 144.

On April 8, 2003, Jack H. Florin, M.D., examined plaintiff and

---

[12] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

diagnosed her with probable MS. A.R. 222-23. Dr. Florin noted that this diagnosis was supported by an abnormal visual evoked potential study. A.R. 223. However, on June 9, 2003, plaintiff underwent visual evoked potential studies of the upper and lower extremities, which were normal, and did not support an MS diagnosis. A.R. 220.

Arnold Ostrow, M.D., an internist, testified at the administrative hearing. He opined that, although plaintiff has been diagnosed with SLE, early MS, neuropathy, fibromyalgia, mild cervical degenerative changes, and mild lumbosacral degenerative changes, none of these impairments meet or equal a listed impairment. A.R. 45-56, 255. Dr. Ostrow further opined that the MS diagnosis was based on a slightly abnormal evoked response, but all other tests were negative, and the SLE diagnosis had been supported only by a positive ANA test, which is non-specific. A.R. 48, 50-51. Finally, Dr. Ostrow opined plaintiff's fibromyalgia diagnosis was not well documented in the record. A.R. 49. In sum, Dr. Ostrow opined plaintiff "really has very little in the way of functional impairment to account for a lot of symptoms." A.R. 56, 255.

Dr. Ostrow opined plaintiff can: occasionally lift and/or carry up to 20 pounds, bend, squat, crawl, climb stairs, and reach; frequently lift and/or carry up to 10 pounds; sit for three hours at a time and five hours in an 8-hour day, stand for two hours at a time and four hours in an 8-hour day, and walk for four hours at a time and 5 hours in an 8-hour day; should have a sit/stand option; is moderately restricted from being around moving machinery; and should be totally restricted from working at unprotected heights. A.R. 49-50, 255.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Burch v. Barnhart, 400 F.3d 676, 678 (9th Cir. 2005); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals

the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff's "[SLE], early [MS], neuropathy, fibromyalgia, and mild degenerative disc disease of the cervical and lumbosacral spine" are "severe" impairments (Step Two); however, plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform her past relevant work as a media director, advertising director and consultant; therefore, she is not disabled. (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found:

[plaintiff] has the [RFC] to perform work activities except

for lifting and carrying more than 20 pounds occasionally and 10 pounds frequently, sitting for more than three hours at a time, standing for more than two hours, and walking for more than four hours at a time, for a total of five hours of standing and walking, and four hours of standing during an eight hour workday. The [plaintiff] requires a sit/stand option. The [plaintiff] is able to use her hands for repetitive simple grasping, pushing and pulling of arm controls and fine manipulation. She can use her lower extremities for pushing and pulling of leg controls. The [plaintiff] can occasionally bend, squat, crawl, climb stairs, and reach. She is restricted from working at unprotected heights and has moderate restrictions against being around moving machinery. There are no restrictions with respect to driving automotive equipment, or being around dust, fumes, gases, or marked changes in temperature and humidity.

A.R. 24. However, plaintiff contends, in part, that the RFC finding is not supported by substantial evidence because the ALJ improperly rejected the opinions of her treating physicians, Drs. Morrison and Ho. The plaintiff is correct.

The medical opinions of treating physicians are entitled to special weight, Reddick, 157 F.3d at 725; Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988), since the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.

1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . ."). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003). "Even if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Bayliss, 427 F.3d at 1216.

Moreover, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight that the opinions of a nonspecialist." Smolen, 80 F.3d at 1285; Benecke, 379 F.3d at 594 n.4. Dr. Ho is a rheumatologist, which "is the relevant specialty for fibromyalgia," and "[s]pecialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." Benecke, 379 F.3d at 594 n.4; Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 873 (9th Cir. 2004). Moreover, rheumatology is also the relevant specialty for lupus. Reed v. Massanari, 270 F.3d 838, 845 & n.3 (9th Cir. 2001); see also Sarchese v. Barnhart, 2002 WL 1732802, *5 (E.D. N.Y.) ("Dr. Greisman is a rheumatologist, the type of specialist who most often treats people with lupus. . . .").

Here, the record clearly shows that both of plaintiff's treating physicians, Drs. Morrison and Ho, have the opinion that plaintiff is unable to handle the rigors of full-time employment because of her fibromyalgia and SLE. A.R. 182-85, 189-92, 243-46. Yet, the ALJ rejected these opinions of plaintiff's treating physicians and instead adopted the opinion of Dr. Ostrow, a nontreating, nonexamining physician, A.R. 22, although "[w]ithout a personal medical evaluation it is almost impossible [for a physician] to assess the residual functional capacity of any individual." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); see also Nelson v. Heckler, 712 F.2d 346, 348 (8th Cir. 1983) (per curiam) ("'[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.'" (citation omitted)).

The ALJ rejected the opinions of Drs. Morrison and Ho because of "the inconsistencies with the record as a whole, including the variance with the claimant's acknowledged level of activities." A.R. 22. However, as discussed below, these reasons are not specific and legitimate reasons supported by the record. First, the ALJ's reference to "inconsistencies in the record as a whole" is merely a gross conclusion since the ALJ provided no specific instances of inconsistencies in the record. See Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion[.]"); Embrey, 849 F.2d at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not

achieve the level of specificity our prior cases have required. . . ."). If the ALJ was suggesting the opinions of Drs. Morrision and Ho about plaintiff's fibromyalgia are not supported by "objective" evidence, see A.R. 21 (noting "a lack of objective manifestations of chronic pain, such as muscle atrophy, severe weight loss, or cognitive deficits") that would be erroneous since fibromyalgia is "a disease that eludes such [objective] measurement." Benecke, 379 F.3d at 594 (citation and internal quotation marks omitted); Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003). Rather, "fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points." Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001); see also Green-Younger, 335 F.3d at 107 ("Green-Younger exhibited the clinical signs and symptoms to support a fibromyalgia diagnosis. . . , including primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body."). Here, when initially evaluated, Dr. Ho found plaintiff had 14 or 15 out of the 18 trigger points for fibromyalgia, and her condition has deteriorated since then. A.R. 268-69.

Second, the ALJ perceived a "variance" between the treating physicians' opinions and "the claimant's acknowledged level of activities" because Drs. Ho and Morrison set forth "restrictions . . . against standing for longer than 15 or 30 minutes at a time . . . [that] exceed the claimant's statements that she is capable of standing for one hour with a cane." A.R. 22. However, the record shows that plaintiff's "level of activities" is not inconsistent with

the opinions of Drs. Morrison and Ho in that they stated plaintiff could stand no longer than 15 minutes at one time **without using a cane**. A.R. 183, 190. In a pain questionnaire dated September 4, 2002, plaintiff also stated she could stand for **15 minutes at a time without using a cane** or one hour while using a cane. A.R. 124. Thus, the opinions of Drs. Morrison and Ho are consistent with plaintiff's level of activities, and the ALJ's reason is not a specific and legitimate reason for rejecting the opinions of plaintiff's treating physicians. See Regennitter, 166 F.3d at 1299 (ALJ erred in rejecting physician's opinion on basis of conflict where no conflict existed); Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of [a] . . . physician's conclusions.").

The ALJ also rejected the opinions of Drs. Morrison and Ho because "neither Dr. Morrison [n]or Dr. Ho are psychiatrist's [sic] or psychologists, and their opinions as to the claimant's mental functioning are not entitled to as great of weight as Dr. Lavid or to [sic] the State agency psychiatrist." A.R. 22. This reason, too, is not a specific and legitimate reason to reject the opinions of Drs. Morrison and Ho. Drs. Morrison and Ho are both plaintiff's treating physicians and, as such, all of their opinions are entitled to greater weight than the opinions of examining physicians -- even psychiatrists. See Benton, 331 F.3d at 1036 ("The opinions of treating physicians are given greater weight than those of examining but non-treating physicians or physicians who only review the record."). Second, a physician "is qualified to give a medical opinion as to

[plaintiff's] mental state . . . even though [he or she] is not a psychiatrist." Sprague, 812 F.2d at 1232; see also Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("Dr. Kho provided treatment for the claimant's psychiatric impairment, including the prescription of psychotropic medication. His opinion constitutes 'competent psychiatric evidence' and may not be discredited on the ground that he is not a board certified psychiatrist. Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations - both physical and mental - is entitled to special weight."). Therefore, the ALJ did not provide specific and legitimate reasons for rejecting the opinions of Drs. Morrison and Ho, and the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence.

**V**

This Court has discretion to award disability benefits to plaintiff when there is no need to remand the case for additional factual findings. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Generally, the Court will direct the award of benefits in cases where the record has been fully developed and where further administrative proceedings would serve no useful purpose. McCartey, 298 F.3d at 1076-77; Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating . . . physician, [this Court] credit[s] that opinion 'as a matter of law.'" Lester, 81 F.3d at 834 (citations omitted); Benecke, 379 F.3d at 594. At the administrative

hearing, vocational expert Susan L. Allison testified that an individual with the limitations set forth by Drs. Morrison and Ho would not be able to perform any substantial gainful activity. A.R. 64-65. Therefore, properly crediting the opinions of Drs. Morrison and Ho, it is clear plaintiff is entitled to disability benefits.[13] Benecke, 379 F.3d at 595; Lewis v. Apfel, 236 F.3d 503, 518 (9th Cir. 2001).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner shall award benefits to plaintiff under Title II of the Social Security Act, 42 U.S.C. § 423, and Judgment shall be entered accordingly.

DATE: February 1, 2006

/s/ Rosalyn M. Chapman
ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

[13] Having reached this conclusion, it is unnecessary to address the other claim plaintiff raises.

R&R\04-1310.MDO
1/31/06